<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **IN RE *EX PARTE* APPLICATION OF JSC UNITED CHEMICAL COMPANY URALCHEM for an Order to Conduct Discovery for Use in Foreign Proceedings Pursuant to 28 U.S.C. § 1782.** | **Civ. A. No. 20-3651 (CCC)**<br><br><br>**<u>OPINION</u>** |

**F<small>ALK</small>, U.S.M.J.**

Before the Court is the application of Petitioner, JSC Uralchem, to serve discovery pursuant to 28 U.S.C. § 1782. [ECF No. 1.] Uralchem, a Russian chemical company, seeks to serve subpoenas, pursuant to Section 1782 and Federal Rule of Civil Procedure 45, on eight TD Bank branches in New Jersey. The subpoenas seek TD's account records for Lawton Lane Chemical, Inc., a North Carolina company. Uralchem contends that Lawton is a "shell company" that received funds diverted from another Russian company -- PJSC Togliattiazot ("TOAZ") -- in which Uralchem holds a minority shareholder interest.

Although commenced as an *ex-parte* application, Lawton sought - and was granted - permission to intervene in this action for purposes of opposing the motion. *See* ECF No. 10. Comprehensive briefs have been submitted, including an authorized sur-reply. No oral argument was held. Fed. R. Civ. P. 78(b). For the reasons set forth below, Petitioner's motion is **DENIED**.

## BACKGROUND[1]

Uralchem is a joint stock company incorporated in Russia that produces ammonium nitrate and nitrogen fertilizers.  *See* Declaration of Andrey Ermizin, ¶ 4.[2]  In 2008, Uralchem became a minority shareholder in TOAZ, a Russian company that is among the top ammonia producers in the world.  *Id.,* ¶ 5.  Uralchem currently holds approximately 10% of TOAZ's outstanding shares.  *Id.,* ¶ 5.  Mr. Vladmir Makhlai and Mr. Sergei Makhlai are alleged to have *de facto* control over TOAZ, and together with family members and associates, are alleged to control about 84% of TOAZ shares through a number of entities.  *Id.,* ¶ 7.

Petitioner contends that, for years, individuals controlling TOAZ, including the Makhlais, have directed the company to sell its products at artificially low rates to a Swiss trader, Nitrochem Distribution AG ("Nitrochem"), that is allegedly controlled by the same individuals.  *Id.*, ¶ 8.  In turn, it is alleged, Nitrochem would then re-sell the products to third parties at market value.  *Id.*  As a result, profits were accrued through Nitrochem rather than properly through TOAZ (the "Nitrochem/Toaz scheme").  *Id.*

Petitioner contends that the Nitrochem/Toaz scheme has spawned "numerous tax and

---

[1] This section is assembled by drawing from the parties' papers for the purpose of basic background only.  The parties have very different views of the events and individuals involved.  For example, Petitioner contends that TOAZ and the individuals that manage it are convicted criminals; on the other hand, Lawton contends that Uralchem is managed by a "corporate raider" favored by the Russian Government, and that the proceedings in Russia are "politically motivated, corrupt corporate raiding, aided by Russian judges who are subject to political influence and not independent."  (Opp'n Br. 2.)  Nothing herein should be read to adopt or endorse any of these characterizations and nothing in this Opinion purports to resolve any fact disputes the parties may have.

[2] Mr. Ermizin is Uralchem's Deputy Head of the Legal Department.  (Ermizin Decl., ¶1.)

2

criminal proceedings in Russia."[3]  Included in this bundle of proceedings are apparently tax judgments entered by 36 different judges across seven Russian courts, including Russia's Supreme Court.  *Id.*  Also included is a 2019 lawsuit brought by Uralchem against TOAZ and its management for shareholder-type claims, which resulted in the entry of a judgment (the "2019 Proceedings.").

At this time, Uralchem represents that it has hired counsel and that it intends to pursue a second shareholder-based case against TOAZ that would "build upon" certain criminal proceedings, as well as the completed 2019 Proceedings.  (*See* Declaration of Vladimir Melnikov ¶ 7.)[4][5]  While the second case would be similar to the 2019 Proceedings, Uralchem claims that this yet-to-be-filed new case would allegedly bring claims against TOAZ and its management for a new time period, potentially include new defendants, and perhaps include a new legal theory.  *Id.*

In November 2019, in order to, among other things, "identify the proper defendants" for the newly contemplated lawsuit, Petitioner sought discovery pursuant to 28 U.S.C. § 1782 in the United States District Court for the District of Connecticut and in the United States District Court for the Southern District of New York.  (*Id.*, ¶¶ 19-20; Reply Br. 15 n.7.)  It appears that

---

[3] The parties' briefs discuss TOAZ and its managements' litigation history dating back 15 years and involving proceedings in different countries.

[4] Mr. Melinkov is a Russian-qualified lawyer and a partner in Moscow office of Linklaters CIS.  (Melinkov Decl., ¶ 1.)

[5] The 2019 proceedings were limited to the period of 2008 through 2012.  Petitioner contends the limitation was the result of the civil proceeding being in some way limited or tied to a Russian criminal case for that period.

both applications were made *ex-parte*, neither was opposed, and both were granted. *Id.* The motion in Connecticut sought wire transfer records involving Nitrochem accounts held in a Stamford-based branch of UBS AG. According to Petitioner, once received, that discovery revealed that Nitrochem was allegedly engaging in "highly suspicious transfers" to Lawton Lane Chemical, Inc., which Petitioner claims is a "shell company" associated with Sergei Makhlai. Specifically, Petitioner claims that between 2009 and 2013, Nitrochem transferred a total of $12,410,743 to Lawton through New Jersey TD Bank branches "without an obvious business reason . . . ." Petitioner further states the following with respect to Lawton's business structure and affiliations:

> Lawton is a company without a website or any other public profile. There is no indication that Lawton is involved in trading with fertilizer companies or that it conducts any alternative valid commercial business. …[P]ublic filings suggest[] that Lawton is connected to TOAZ through Mr. Sergei Makhlai, who exercises *de facto* control of TOAZ. For example, public records connect Sergei Makhlai to Lawton through a company called MIC International Trading. Sergei Makhlai was the former President of MIC. And, in turn, MIC shared the same Secretary/Treasurer as Lawton: Irene Michaels. MIC's secretary, Irene Michaels, also has a name and signature that are notably similar to the name and signature of Sergei Mikhlai's wife, Irina Makhlai. In addition, Lawton's current President, Pat Marchiionda, has the same address as the Principal Office Address of MIC.

(Petitioner's Br. 5-6, citing Ermizin Decl., ¶¶ 22, 24-27.)

That brings us to the present motion. Uralchem now seeks discovery of TD's bank records for Lawton wire transfers between 2009 and the present, including but not limited to transfers in which the New Jersey banks acted as intermediaries or correspondent banks. (Petitioner's Br. 6.) Uralchem claims that this discovery will help it to understand to whom Nitrochem was transferring money received from third-party buyers as part of the Nitrochem/Toaz scheme. It claims such discovery will also help uncover the path of TOAZ's

4

diverted profits and ensure those who profited from this scheme are named as Defendants in a new case.

TD Bank does not oppose the application.  (*See* Reply Br. 14.)  Lawton, however, opposes the application claiming that it fails to satisfy the statutory requirements for Section 1782 discovery, as well as for a number of discretionary reasons.  Chief among them is Lawton's contention that Uralchem has no real intention to file a new lawsuit and that it is misusing Section 1782 to obtain information to collect on a judgment, and that any new case would be barred by *res judicata*-type principles.  Lawton also strongly contends that the Russian judicial system is biased against the Makhlais and any proceedings would not comport with the notions of due process.

## **LEGAL STANDARD**

Section 1782 is the "product of congressional efforts, over the span of nearly 150 years, to provide federal court assistance in gathering evidence for use in foreign tribunals." *In re O'Keeffe,* 2015 WL 540238 (D.N.J. Feb. 10, 2015), aff'd, 2015 WL 5039723 (D.N.J. Aug. 26, 2015), aff'd 646 Fed. Appx. 263 (3d Cir. 2016).  The statute provides in relevant part:

(a) the district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation.

28 U.S.C. § 1782(a).

"Congress enacted 1782 to further the following goals: facilitating the conduct of litigation in foreign tribunals, improving international cooperation in litigation, and putting the United States into the leadership position among world nations." *Bayer AG v. Betachem, Inc.*,

173 F.3d 188, 191 (3d Cir. 1999). However, "these goals do not in turn mean that a party to foreign litigation is entitled to unbridled and unlimited discovery under the statute." *Id.* "Section 1782 vests district courts with discretion to grant, limit or deny discovery . . . . [A] district court may refuse to grant a discovery request, or may impose various conditions and protective orders attendant to the production of requested documents." *Id.*

A court deciding a Section 1782 application "must first determine whether certain statutory requirements are met, and if those requirements are satisfied, the Court may then consider other factors to determine whether to exercise its discretion to grant the application." *In re O'Keeffe*, 646 Fed. Appx. 263, 265-66 (3d Cir. 2016). The statutory requirements are:

(1) the person from whom discovery is sought resides in the district;
(2) the request seeks the "testimony or statement" of a person or the production of a "document or thing";
(3) the discovery is for use in proceedings before a foreign or international tribunal; and
(4) the application is made by either a foreign or international tribunal or an interested party.

*Id.*

If the statutory requirements are met, the district court may – but is <u>not</u> required to – allow discovery. The Supreme Court has identified four additional factors – referred to as the *Intel* factors - that guide the Court's "discretionary" decision:

(1) whether the documents or testimony sought are within the foreign tribunal's jurisdictional reach, and thus accessible absent Section 1782;
(2) the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance;
(3) whether the Section 1782 request conceals an attempt to circumvent foreign proof gathering restrictions or other policies of a foreign country or the United States; and
(4) whether the subpoena contains unduly intrusive or burdensome requests.

*Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264-65 (2004).

Section 1782 is intended to be interpreted liberally, and the party opposing a Section 1782 application has the burden to show why the discovery is improper.  *See, e.g.*, *In re Bayer AG*, 146 F.3d 188, 196 (3d Cir. 1988) ("Consistent with the statute's modest prima facie elements and Congress's goal of providing equitable and efficacious discovery procedures, district courts should treat relevant discovery materials sought pursuant to Section 1782 as discoverable unless the party opposing the application can demonstrate facts sufficient to justify denial of the application."); *see also Kulzer v. Esschem*, *Inc.*, 390 Fed. Appx. 88, 92 (3d Cir. 2010).

## DISCUSSION

**A.    Analysis of Statutory Requirements**

The parties only dispute the third statutory requirement – i.e., whether the discovery sought is "for use" in a "reasonably contemplated" foreign proceeding.  *See Intel Corp.*, 542 U.S. at 259.[6]

To be considered "for use" in a foreign proceeding, the discovery should be something "that will be employed with some advantage or serve some use in the proceeding." *Mees v. Buiter*, 793 F.3d 291, 298 (2d Cir. 2015).  "Federal courts interpret the 'for use' phrase liberally." *In re Application of Sauren-Fonds Select SICAV*, 2016 WL 6304438, at *3 (D.N.J. Oct. 26, 2016).  The key question is not whether the information sought is "relevant," but whether it the proponent of the evidence "will actually be able to *use* the information in the

---

[6] *See* Opp'n Br. 16; Reply Br. 2.

7

proceeding." *See Certain Funds v. KPMG, LLP*, 798 F.3d 113, 120 (2d Cir. 2015) (emphasis in original).

A foreign proceeding need not be pending at the time a Section 1782 application is filed, provided it is "within reasonable contemplation." *Intel*, 542 U.S. at 259. "Reasonable contemplation" requires some showing of "objective indicium" and a "concrete basis" that a contemplated action will proceed. *See, e.g.*, *Certain Funds, Accountants and/or Inv. Vehicles v. KPMG, LLP*, 798 F. 2d 113, 123-24 (2d Cir. 2015). While discovery should be liberally allowed, Section 1782 is not traditionally employed in order to provide discovery to justify the reopening of already completed foreign litigation. *Cf. Comision Ejecutiva Hidoelectria del Rio Lempa v. Nejapa Power Co., LLC*, 341 Fed Appx. 821, 828 (3d Cir. 2009); *In re Asia Maritime Pacific Limtd.*, 253 F. Supp. 3d 701, 706-08 (S.D.N.Y. 2015).

Lawton challenges that any action is "reasonably contemplated" and that the discovery sought is "for use" in such a proceeding. Lawton contends that Uralchem is simply trying to trace down assets associated with the concluded 2019 Proceeding. Lawton further contends that there is no "reasonable contemplation" that Uralchem will file what it claims is effectively the same lawsuit as the 2019 suit, against the same defendants, seeking the same relief. Lawton also contends that the discovery being sought was already excluded from the 2019 Proceeding, and therefore, cannot be "for use" in any new proceeding. Finally, Lawton argues that any new case would be barred by the Russian statute of limitations and *res judicata*-type principals.

Uralchem counters that the TD Bank records will be used to help prove damages for "a new period of time, the liability of new defendants, and a new theory of liability." (Reply Br. 8; *see also* Melnikov Decl., ¶¶ 13-23.) Uralchem's certifications explain that the 2019 Proceeding

only covered the time period of 2008 to 2012 because the suit tracked certain criminal charges brought by Russian prosecutors at that time. *Id.,* ¶¶ 17-23.

There is overlap and perhaps duplication between the 2019 Proceeding and the contemplated new case. However, sworn certifications of the type submitted here are generally sufficient to satisfy the requirement that a party has "reasonable intention" to proceed with a lawsuit. *See In re Top Matrix Holdings Ltd.*, 2020 WL 248716, at *4 (S.D.N.Y. Jan. 16, 2020) ("sworn statements attesting to petitioner[']s[] intent to litigate and describing the legal theories on which they plan to rely are sufficiently concrete to meet the statutory requirement"); *see also Certain Funds, Accounts &/or Inv. Vehicles v. KPMG, L.L.P.,* 798 F.3d 113, 124 (2d Cir. 2015). The Court is satisfied that Mr. Melinkov's declaration establishes Uralchem's intention to file a new case.

But that is not the end of the statutory inquiry. The Court is not satisfied that the "for use" requirement has been met. The "for use" requirement requires that the Petitioner establish the discovery include "any materials that can be made use of in the foreign proceeding to increase [the petitioner's] chances of success." *In re the Application of Sauren Fonds-Select SICAV*, 2016 WL 6304438, at *3 (D.N.J. Oct. 26, 2016) (quoting *Mees*, 793 F.3d at 299)). Uralchem claims that it intends to use the TD Bank records to "help trace proceeds from the TOAZ-Nitrochem Scheme to unlawful recipients, helping to demonstrate their connection to and participation in the fraud, and thus increasing Petitioner's likelihood of succeeding on its claims." (Reply Br. 12.) That is not enough to satisfy the "for use" requirement.

Uralchem's problem is that *it* argued, successfully, that the same information it now seeks to obtain was *not required* to support its claims in the 2019 Proceeding. (Lawton's Sur-

9

Reply 3; Melnikov Decl., ¶ 24.)  The current position is a complete 180 unsupported by adequate explanation.  If the newly contemplated proceeding is merely building upon the 2019 Proceeding, as Uralchem contends, why would the need for such discovery change? A Russian court has already determined – on Uralchem's own argument - that this type of information is not relevant to these types of claims.  (*Id.*)  This takes the steam completely out of Uralchem's position that the information is supposedly needed for their newly contemplated case.  The Court understands that this information may be useful – and desired – to conjure up new defendants or try to collect on a prior judgment.  But that is not the purpose of Section 1782 proceedings.  *See, e.g.*, *Ayyash v. Crowe Horwarth LLP*, 2018 WL 2976017, at *3 (S.D.N.Y. June 13, 2018).  A foreign tribunal's prior rejection of the same information sought in a 1782 application is powerful evidence that the discovery is not "for use" in a foreign proceeding.  *See financialright GmbH v. Robert Bosch LLC*, 294 F. Supp. 3d 721, 730 (E.D. Mich. 2018) (the court is "mindful that if history is any guide to the future, the documents in question will not be 'usable' and, therefore, not 'for use' in these foreign proceedings.").

      The Court does not believe that it is in the interests of justice to allow discovery into a non-party's banking records when such documents have previously and expressly been rejected by the same foreign tribunal in question.  *See, e.g.*, *id*.  As a result, Uralchem has not establish that the information sought is "for use" in a foreign proceeding, *see Certain Funds v. KPMG, LLP*, 798 F.3d 113, 120 n.7 (2d Cir. 2015), while Lawton has shown that the discovery sought would not be utilized in a newly filed case in Russia.  *See, e.g.*, *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1100 (2d Cir. 1995); *Heraeus Kulzer, GMBH v. Biomet, Inc.*, 633 F.3d 591, 594 (7th Cir. 2011) ("[D]istrict courts must be alert for potential abuses that would warrant a

denial of an application" including "discovery of documents or other materials that the foreign court would not admit into evidence.").

Based on the above, the Section 1782 statutory requirements are not satisfied. Since Petitioner has not met the statutory requirements for Section 1782 relief, there is no need to evaluate the discretionary *Intel* factors. However, for purposes of completeness, they are evaluated below. Moreover, even if the statutory requirements were satisfied, the Court is not persuaded to exercise its discretion to allow the discovery sought based on the record presented.

**B.**     **Analysis of Discretionary *Intel* Factors**

1. ***Intel Factor 1: Whether the Discovery is in the Foreign Tribunal's Reach***

This factor is not in dispute. Resort to Section 1782 is disfavored when the targets of discovery are actual participants in the foreign proceeding. *See Intel*, 542 U.S. at 264. TD Bank possesses the discovery sought. And Petitioner confirms that TD Bank is not and will not be a party to any Russian proceeding. Therefore, the discovery sought is not available to the foreign tribunal.

2. ***Intel Factor 2: The Nature of the Foreign Tribunal and Receptivity to Federal Court Assistance***

This factor focuses on the nature of the foreign tribunal. However, the papers are not entirely clear as to the specific tribunal Petitioner is considering and whether any proceedings would be limited to just one court. For example, at one point in the papers, it is said that Petitioner may be seeking this discovery to support proceedings in Russia "or elsewhere." (*See* Opp'n Br. 14.) However, in reply, Petitioner seems to refer to a court in Samara, Russia. (Melnikov Decl., ¶ 20.) Given there is some inconsistency in the papers it makes evaluation of

the "nature of" the specific tribunal somewhat complicated. Nevertheless, since the papers from both parties do focus overwhelmingly on a contemplated action in Russia, we will consider this factor in that context.

Lawton argues that the second *Intel* factor strongly weighs against discovery because the Russian courts are unfairly biased against TOAZ and that the proceedings do not comport with due process. Lawton contends that TOAZ is one of the largest Russian companies that is not "state-controlled," and therefore, is subject to continuous unfair and corrupt attacks and practices spearheaded by the Russian Government, including the 2019 Proceeding and various criminal matters in which Vladimir Makhlai appears to have been tried *in absentia*.

Section 1782 discovery must be "intended for use in a foreign proceeding which comports with notions of due process." *John Deere Ltd. v. Sperry Corp.*, 754 F.2d 132, 138 (3d Cir. 1985). Courts in the United States must exercise "caution and deference . . . in even approaching the question of the impartiality of a foreign court." *Aguinda v. Texaco, Inc.*, 2000 WL 122143, at *3 (S.D.N.Y. Jan. 31, 2000). However, Section 1782 is a discretionary statute, and a petitioner is tasked with convincing the Court that granting the application is in the interests of justice. *See*, *e.g., Intel*, 542 U.S. at 264 ("[A] district court is not required to grant a Section 1782 discovery application simply because it has the authority to do so."); *In re Bayer AG*, 146 F.3d at 196 (3d Cir. 1998).

Here, the papers reflect a deeply contentious and politicized relationship between Petitioner and the Makhlais that involves allegations of corruption and political bias and Russian governmental interference. The papers present this issue in great detail. Included within this discussion are two different extradition proceedings – one in 2008 and a second in 2016 – where

judges in the United Kingdom *refused* Russian extradition requests for Makhlai (and others) based on the same basic Uralchem allegations set forth in this case.

The Court is not prepared to comment on the overall fairness of the Russian judicial system, nor is it presently necessary. But it is worth noting that two respected courts have – and not just on the Russian system at large, but specifically with respect to the <u>actual individuals and entities involved in this case</u>. Some discussion of these findings is necessary to meet the Court's obligations as set forth by the Third Circuit in *John Deere*.

In 2009, with respect to a Russian Federation request to extradite Vladmir Makhlai from the United Kingdom to face tax charges related to the TOAZ-Nitrochem scheme, a judge in London denied the request and found:

- No evidence had been established that Makhali had an interest in Nitrochem;
- That the charges were politically motivated, the Judges were influenced, and the trial would not be fair;
- That "unchallenged evidence clearly implicates officials from the Presidential Administration in an attempt to influence a Judges [sic] decision in respect of the TOAZ Corperation [sic]";
- The proceedings [were] for the purpose of prosecuting or punishing the defendants for their political opinions and that they will be prejudiced at their trial.

(Declaration of Rodney Villazor, ¶¶ 14-20, Ex. 1 (2009 UK Decision)).

In 2016, the Russian authorities attempted to extradite a TOAZ manager, Evgeniy Korolev, from the UK, again on Uralchem-related charges. The UK-based judge denied the request, finding:

- The Uralchem related charges were "unlawful and abusive and part of a long lasting corporate raid attack on Toaz" [and that] "Uralchem is constantly initiating abusive document seizures and unfounded tax and criminal claims . . . for an unlawful takeover of Toaz"
- That Mazepin [Uralchem's owner] and Uralchem were engaged in an abusive raid

- With respect to the Russian courts, "[t]here is no sense that the courts will protect Toaz from an unscrupulous raider such as a Mazepin . . ." and that there was a "real risk that Mr. Korolev will face a flagrantly unfair trial" in Russia.

(Villazor Decl., Ex. 3.)

In addition, based on these extradition decisions, a court in the British Virgin Islands denied a 2018 request by the Russian Federation to obtain documents about companies purportedly connected to the alleged Toaz-Nitrochem scheme. *Id.* at Ex. 5. The court's decision relied on the prior extradition decisions and denied the Russian Federation's request for documents and information, finding that "the BVI authorities (to whom the Russian Federation made its request) failed to give sufficient consideration to evidence that Toaz was subject to unlawful corporate raiding." (Lawton's Sur-Reply at 10, citing Villazor Decl., Ex. 5 (judgment entered in *Magnum Inv. Trading Corp. et al. v. Attorney General of the B.V.I.*, High Court of Justice (B.V.I.) ("2018 B.V.I. Decision"))).

The Court has an obligation to consider due process and the interests of justice. *See* John *Deere*, 754 F.2d at 138. Suffice it to say that the papers submitted raise real questions about whether a proceeding in Russia would afford due process or be in the interests of justice. Three courts outside of Russia have previously found that Uralchem-related proceedings like this one may be subject to undue governmental influence. These are presumably neutral courts making findings, after lengthy hearings, that Uralchem-Toaz proceedings in Russia are concerning. This causes the Court to pause and question what the interests of justice really require here. When that backdrop is considered in light of the fact, discussed *supra*, that the information sought has not been established to be "for use" in a judicial proceeding, the Court does not believe that the interests of justice support discovery in this case. Thus, the Court would exercise its discretion

to deny the application.

### 3. *Intel* Factor 3:  Circumvention of Proof Gathering Restrictions

The application presents additional concerns regarding the circumvention of proof gathering restrictions and delay.  Again, evidence of financial tracing was not relevant to the 2019 Proceedings.  Therefore, pursuing similar documents now, after that proceeding has closed, could be construed to be a circumvention of prior judicial decision-making or – at worst - sought for potentially different reasons such as to collect on a judgment or further another domestic Section 1782 application.  In all events, Petitioner's delay in waiting to pursue this information until the 2019 Proceeding has concluded - and after it successfully excluded it from those proceedings - raises concerns about the interests of justice in authorizing the discovery now.  Thus, even if the statutory requirements were met, the Court would be strongly disinclined to exercise its discretion to authorize the discovery under the third *Intel* factor.

### *Intel Factor 4: Is the Section 1782 Request Unduly Burdensome or Intrusive?*

"A district court evaluating a §1782 request should assess whether the discovery sought is overbroad or unduly burdensome by applying the familiar standards of Rule 26 of the Federal Rules of Civil Procedure." *Mees*, 793 F.3d 302.  The eight TD Bank branches – the entities being served with the subpoenas – have not claimed that responding would be unduly burdensome.  However, Lawton, argues that the date range sought (2009 to present) is too expansive, in part because Nitrochem allegedly dissolved in 2014.  Lawton also argues that the discovery sought is a classic fishing expedition, seeking to discovery new potential parties, rather than collect evidence for already established claims.  Given the concerns that have been raised regarding the receptivity of the foreign tribunal to this type of evidence in the 2019 Proceedings,

15

the Court is not satisfied that the discovery sought is appropriate or proportional, and concludes that it production could be unreasonably intrusive, especially given its apparent negligible importance to any new Russian proceeding.

## CONCLUSION

For the reasons stated above, Section 1782's statutory requirements are not satisfied and the discretionary *Intel* factors weigh against disclosure.  Therefore, Petitioner's application for leave to serve discovery pursuant to Section 1782 [ECF No. 1] is **DENIED.**


                                        **s/Mark Falk**
                                        **MARK FALK**
                                        **United States Magistrate Judge**


**DATED:  July 24, 2020**