UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

In re *Ex Parte* Application of JSC UNITED
CHEMICAL COMPANY URALCHEM for an
Order to Conduct Discovery for Use in Foreign
Proceedings Pursuant to 28 U.S.C. § 1782.

Case No. 20 Civ. 3651

Oral Argument Requested

**APPLICATION FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782 TO
CONDUCT DISCOVERY FOR USE IN A FOREIGN PROCEEDING**

Petitioner, JSC United Chemical Company Uralchem ("Uralchem"), respectfully asks

this Court to grant its proposed Order, which grants Petitioner leave, pursuant to 28 U.S.C. §

1782 and Rules 26 and 45 of the Federal Rules of Civil Procedure, to serve TD Bank, National

Association, 1701 Route 70 East, Cherry Hill, NJ 08034 ("TD Bank") with the subpoena

attached as Exhibit "A" to the Declaration of Gregory Bevelock, dated September 27, 2021

("Bevelock Declaration").

The requested relief is necessary for the purpose of obtaining limited, but important,

discovery in connection with ongoing proceedings in Ireland (the "Irish Proceedings") and

anticipated proceedings in Russia (the "Russian Proceedings"). Based upon the Declarations of

Vladimir Melnikov, Garrett Breen, William Butler, and the accompanying Memorandum of Law

to this Application, the Court should grant this Application.

**A. Background**

Petitioner Uralchem is a joint-stock company incorporated in Russia that produces

ammonium nitrate and nitrogen fertilizers. Declaration of Vladimir Melnikov, September 27,

2021 ("Melnikov Decl.") ¶ 4. In 2008, Uralchem became a minority shareholder in PJSC

Togliattiazot ("TOAZ"), a Russian company that is among the top ammonia producers in the

world. *Id.* ¶ 5. Uralchem currently holds approximately 10% of TOAZ shares. *Id*. Although the ownership structure of TOAZ is not transparent, it is believed that Mr. Vladimir Makhlai and/or Mr. Sergei Makhlai are majority indirect shareholders of TOAZ and exercise *de facto* control over TOAZ through a number of legal entities. Melnikov Decl. ¶¶ 6, 10.

### The TOAZ-Nitrochem Scheme

Uralchem believes that, for several years, it has been a victim of a fraudulent scheme through which the majority shareholders and management of TOAZ diverted profits from TOAZ by selling TOAZ's products to a Swiss trading company, Nitrochem Distribution AG ("Nitrochem"), at artificially low prices. Melnikov Decl. ¶ 8. Nitrochem would in turn resell the products at market value (the "TOAZ-Nitrochem Scheme"). *Id.* As a result of this scheme, profits were accumulated by Nitrochem rather than TOAZ. *Id.* Those profits were then distributed among the majority shareholders, or their controlling persons, which caused loss to, and underfinancing of, TOAZ and material injury to its minority shareholders including Uralchem. *Id.*

### Criminal and Tax Proceedings in Russia Concerning the TOAZ-Nitrochem Scheme

Similar schemes, in which majority shareholders siphon off company profits to foreign companies to the detriment of minority shareholders and the state budget, have proliferated in recent years in Russia. *Id.* ¶ 9. This has prompted Russian tax authorities to take action, including with respect to the TOAZ-Nitrochem Scheme. *Id.* Through a number of audits, Russian tax authorities found that, through TOAZ's artificially low export prices, TOAZ had unlawfully evaded significant amounts of profit tax owed to the Russian government between 2009 and 2013. *Id*. TOAZ unsuccessfully sought to challenge these findings in a series of legal proceedings before Russian courts. *Id.* In total, 36 judges in 7 different courts (including the

Supreme Court of the Russian Federation) found that, while trading with Nitrochem, TOAZ had diminished its export prices to evade profit tax. *Id.* These court proceedings also established that TOAZ and Nitrochem belonged to one group of companies controlled, *inter alia*, by Mr. Vladimir Makhlai and Mr. Sergei Makhlai. *Id.* ¶ 10.

Criminal charges for fraud were brought against five individuals (collectively, the "Criminal Defendants"), including Mr. Sergei Makhlai and Mr. Vladimir Makhlai, for their role in this below-market export scheme, and on July 5, 2019, a criminal court in Russia found them guilty of fraud (the "Criminal Judgment"). *Id.* ¶ 11. In the context of this criminal proceeding, the court also granted a related civil claim by Uralchem for damages caused to TOAZ and Uralchem as its shareholder by the TOAZ-Nitrochem Scheme (the "Prior Uralchem Civil Claim"). *Id.* ¶ 12. This procedure, through which a victim of crime brings a civil claim for damages resulting from a crime that is being prosecuted as part of those criminal proceedings, is a regular remedy in Russia. *Id.* The Prior Uralchem Civil Claim was brought on behalf of Uralchem and TOAZ against the Criminal Defendants and a number of companies found to have participated in the TOAZ-Nitrochem Scheme. *Id.* The Criminal Judgment awarded damages to TOAZ and Uralchem. *Id.* On November 26, 2019, an appellate court upheld the Criminal Judgment (together, with the Criminal Judgment and the Prior Uralchem Civil Claim, the "2019 Proceedings"). *Id.* ¶ 13. However, as of today, the court-ordered compensation has not been paid. *Id.*

**B.  The Foreign Proceedings**

Uralchem now seeks discovery pursuant to 28 U.S.C. § 1782 for use in ongoing proceedings in Ireland and anticipated proceedings in Russia.

***The Anticipated Civil Proceedings in Russia***

Uralchem anticipates commencing fresh civil legal proceedings in Russia (the "Russian Proceedings") to pursue damages claims against individuals who were involved in the TOAZ-Nitrochem Scheme but who were not parties to the 2019 Proceedings. *Id.* ¶¶ 59-60. While the 2019 Proceedings held some individuals accountable for their roles in the TOAZ-Nitrochem Scheme, that judgment has yet to be satisfied. To obtain full redress, Uralchem retained Linklaters CIS to investigate and pursue any additional civil claims available. *Id.* ¶ 61.

As part of this investigation, Uralchem has identified at least two individuals who were likely involved in and benefited from the TOAZ-Nitrochem Scheme but who were not defendants in the 2019 Proceedings—Mr. Andrei Makhlai and Mrs. Irina Makhlai—as potential defendants. *Id.* ¶ 62. Recent evidence suggests that both have ties to the TOAZ-Nitrochem Scheme. Mrs. Irina Makhlai—the wife of Sergei Makhlai, a *de facto* controlling person of TOAZ—has demonstrable ties to Lawton, a shell company that received suspicious wire transfers from Nitrochem. *Id.* ¶¶ 64-65. She also recently brought legal proceedings in Russia to establish her alleged entitlement to approximately 35% of TOAZ's shares. *Id.* ¶¶ 69-70. The first instance court dismissed her claim on the grounds that it was brought for the purpose of assisting Mr. Sergei Makhlai to put his assets out of reach in the wake of the Criminal Judgment. *Id.* ¶ 71. Similarly, corporate documents link Mr. Andrei Makhlai, the brother of Sergei Makhlai, to Nitrochem and a number of offshore entities related to TOAZ. *Id*. ¶ 68.

***Discovery Obtained from UBS Stamford and New York Banks***

To support the anticipated proceedings, Uralchem has sought to obtain documents that relate to fraudulent distributions of profits that Nitrochem received from reselling the TOAZ products it acquired at artificially low prices to third parties at market rates. *Id.* ¶ 23. Nitrochem

often received payment for these products in U.S. dollars. *Id.* Invoices and payment confirmations obtained in the 2019 Proceedings show that while these payments were ultimately credited to Nitrochem's Swiss bank account with UBS AG (Switzerland), they passed through a bank account at UBS Stamford. *Id.* ¶ 24. UBS Stamford, therefore, possessed information regarding Nitrochem's U.S. dollar transactions, including as part of the TOAZ-Nitrochem Scheme. *Id.* 4

Accordingly, Uralchem brought an application to obtain records of the U.S. transfers. On November 22, 2019, the United States District Court for the District of Connecticut granted Uralchem's petition, brought pursuant to 28 U.S.C. § 1782, for subpoenas to obtain discovery of data concerning wire transfers sent or received by Nitrochem that passed through UBS Stamford. *See In re Ex Parte Application of JSC United Chem. Co. Uralchem*, 19 Civ. 140. The District of Connecticut then granted subsequent requests for subpoenas to two additional UBS-related entities: UBS Financial Services and UBS Group AG. Melnikov Decl. ¶ 25.

The discovery UBS Stamford produced (the "UBS Discovery") revealed a number of highly suspicious transfers between Nitrochem and shell companies with no apparent ties to the chemical industry. *See In re Ex Parte Application of JSC United Chemical Company Uralchem*, No. 20 Misc. 187, Dkt. 1 (S.D.N.Y. May 18, 2020). Those transfers passed through a number of banks in New York City (the "New York Banks"). *Id.*

As part of its ongoing effort to uncover the TOAZ-Nitrochem Scheme, Uralchem brought another discovery application in New York. On May 18, 2020, after holding a hearing, the Hon. Gregory H. Woods of the United States District Court for the Southern District of New York granted Uralchem's application, brought pursuant to 28 U.S.C. § 1782, for subpoenas to obtain discovery of data concerning wire transfers sent and received by Nitrochem and those shell

companies that passed through the New York banks. *See Id.*, Dkt. 21. All of the New York Banks were served; none opposed the application.

***Suspicious Transactions Pass Through New Jersey to Lawton Lane Chemical, Inc.***

The UBS Discovery also revealed a number of highly suspicious transactions involving Lawton, a North Carolina company. Melnikov Decl. ¶ 26. Between 2009 and 2013, only through the UBS account, a total of $12,410,743 was transferred from Nitrochem to Lawton. *Id.* ¶ 27. The funds Nitrochem sent to Lawton were credited to or passed through accounts at TD Bank branches in New Jersey. *Id.* ¶ 28. This significant amount of money was sent to Lawton without an obvious business reason, raising concerns about the lawfulness of these transactions. *Id.* ¶ 29. Lawton is a company without a website or any other public profile. *Id.* There is no indication that Lawton is involved in trading with fertilizer companies, such as Nitrochem, or that it conducts any other valid commercial business. *Id.* Although Lawton opposed Uralchem's original § 1782 application before this Court, it never denied these transfers or offered any explanation for them.

In addition to the suspicious nature of the Lawton transactions themselves, public filings suggest that Lawton is connected to TOAZ through Mr. Sergei Makhlai, who exercises *de facto* control of TOAZ. *Id.* ¶ 28. For example, public records connect Sergei Makhlai to Lawton through a company called MIC International Trading, Inc. ("MIC"). *Id.* ¶ 30. Sergei Makhlai was the former President of MIC. *Id* ¶ 31. And, in turn, MIC shared the same Secretary/Treasurer as Lawton: Irene Michaels. *Id.* MIC's secretary, Irene Michaels, also has a name and signature that are notably similar to the name and signature of Sergei Makhlai's wife, Irina Makhlai. *Id.* In addition, Lawton's President, Pat Marchiionda, has the same address as the Principal Office Address of MIC. *Id.* ¶ 32.

***Uralchem's Original Section 1782 Application in this Court***

Given that (i) there were no obvious business reasons for Nitrochem to transfer $12,410,743 to Lawton; (ii) Lawton appears to be a shell company; and (iii) Lawton is apparently connected to Sergei Makhlai, who controls TOAZ (which along with Nitrochem executed the above-described scheme); Uralchem sought discovery, through application to this Court, from TD Bank of wire transfers to and from Lawton. Petitioner filed this original § 1782 Application on April 3, 2020. Dkt. 1. The application sought discovery of data concerning wire transfers sent or received by Lawton between 2009 and the present, including but not limited to transfers in which TD Bank acted as intermediary or correspondent bank. This discovery was expected to indicate (i) whether Lawton received additional funds from Nitrochem or other entities connected to TOAZ that did not appear in the UBS Discovery (either because the transfer passed through another bank used by Nitrochem in the US or occurred outside the period requested in the UBS discovery), and (ii) who ultimately received the funds sent from Nitrochem through Lawton. Melnikov Decl. ¶ 35(b).

With Uralchem's consent, this Court granted Lawton's request to intervene and set a briefing schedule. Dkt. 10. On May 20, 2020, TD Bank, the object of the subpoena did not oppose the application. Dkt. 11.

This Court denied Petitioner's Application without a hearing on the grounds that it sought information that was not "for use" in a foreign proceeding because similar evidence was not required in the prior 2019 Proceedings. Dkt. 26, at 9-10. The Opinion reasoned that the subpoena would not be in the "interests of justice" based on three non-Russian decisions about other proceedings that "had previously found that Uralchem-related proceedings like this one may be subject to undue governmental influence." *Id.* at 14.

On June 29, 2021, after Uralchem appealed , the Hon. Claire C. Cecchi issued an Opinion allowing Uralchem to file an amended application, "to the extent Uralchem has additional evidence that it wishes to submit in support of its requested relief," within thirty days. Dkt 33 at 7. The Court subsequently extended this deadline to September 27, 2021. Dkt. 36.

***The Irish Proceedings***

A month after Judge Cecchi issued her opinion granting leave to amend Uralchem's application, the Court in related proceedings against Uralchem in Ireland (the "Irish Proceedings") indicated that it had decided to deny Uralchem's application to dismiss those proceedings on jurisdictional grounds with a written judgment to follow.

The Irish Proceedings were initiated in the High Court of Ireland on November 9, 2016, by four offshore companies that, as fiduciary managers, claim to hold approximately 70% stake in TOAZ (the "Irish Plaintiffs"). Melnikov Decl. ¶¶ 15, 26; Declaration of Garrett Breen, September 27, 2021 ("Breen Decl.") ¶ 6. Uralchem believes that the Irish Plaintiffs are controlled by Mr. Sergei Makhlai and his associates, and this has not been admitted or denied by the Irish Plaintiffs in the documents submitted in the Irish Proceedings to date. Breen Decl. ¶ 6.

The Irish Plaintiffs allege that Uralchem and other defendants conspired with Russian state authorities, including through the 2019 Proceedings, to defraud and injure the Irish Plaintiffs by wrongfully divesting them of their shareholdings in TOAZ and/or causing catastrophic damage to the value of their shareholdings. Melnikov Decl. ¶ 16. The Russian courts' findings concerning the TOAZ-Nitrochem Scheme in the 2019 Proceedings, as well as in the multiple tax proceedings, are all alleged to be a part of the claimed conspiracy. *Id.* The Irish Plaintiffs are seeking damages in the amount of the value of their 70% shareholding in TOAZ, a company that they claim to be valued in excess of $3 billion. *Id.* ¶¶ 41, 57.

Uralchem challenged the jurisdiction of the Irish court to hear these claims on the grounds that the Irish Plaintiffs' case had no connection to Ireland and they were artificially using a single Irish defendant as a device to manufacture jurisdiction. *Id.* ¶ 17. While the parties are still awaiting a formal written decision, on July 30, 2021, the presiding judge orally indicated that the Irish court would assume jurisdiction. *Id.* ¶ 18; Breen Decl. ¶ 9. Because of the long-pending jurisdictional dispute, Uralchem has not yet presented a substantive defense in the Irish Proceedings. Melnikov Decl. ¶ 19; Breen Decl. ¶ 9. Once the Irish court issues a written ruling on the jurisdictional issue (without prejudice to any appeal), Uralchem will have to defend itself on the merits. *Id.*

The UBS Discovery, obtained through Uralchem's § 1782 application in the District of Connecticut, has already been used in the Irish Proceedings without issue. Melnikov Decl. ¶¶ 47-49. In July 2020, the Irish Plaintiffs filed an interlocutory application for an anti-enforcement injunction against Uralchem, seeking to prohibit Uralchem from enforcing the damages awarded to TOAZ and Uralchem in the 2019 Proceedings. Breen Decl. ¶ 12. In support of their application, the Irish Plaintiffs allege that the judgments issued and upheld in the 2019 Proceedings were fraudulently procured by Uralchem and claim the TOAZ-Nitrochem Scheme was fabricated by Uralchem and other defendants. *Id.* ¶ 14. Uralchem vigorously defended itself against that application. As part of its defense, it filed an attorney affidavit summarizing the UBS Discovery obtained in the District of Connecticut, including the transfer of over $12.4 million from Nitrochem to Lawton and transfers to and from the Irish Plaintiffs and related entities. *Id.* ¶¶ 16-17. No objection was made to the admissibility of this evidence. *Id.* ¶ 16. Judgment on the anti-enforcement injunction application is pending. *Id.* ¶ 13

**C.  The Documents Sought**

Uralchem now seeks the same limited wire transfer documents from TD Bank for use in the Russian Proceedings and the Irish Proceedings. Uralchem's proposed subpoena contains one document request that seeks the following documents from TD Bank:

> All Documents, including logs or spreadsheets, concerning all wire transfers between 2009 and the present sent or received by Lawton Lane Chemical Inc., including but not limited to transfers in which you acted as an intermediary bank or a correspondent bank to facilitate an interbank funds transfer.

The discovery sought here would be highly relevant in the Irish Proceedings where Uralchem should have the opportunity to submit important evidence in defense of the Irish Plaintiffs' claims. *Id.* ¶ 18. The requested discovery has the potential of rebutting the Irish Plaintiffs' allegation that the TOAZ-Nitrochem Scheme did not exist and was invented by Uralchem to procure the 2019 Proceedings judgments against the Irish Plaintiffs' assets. *Id.* If, for instance, the discovery sought here confirms that Lawton was receiving payments from companies associated with TOAZ, including the Irish Plaintiffs (e.g. through dividends), this will further confirm the common control among Lawton, Nitrochem, and the Irish Plaintiffs (which the Irish Plaintiffs deny). If the evidence shows that Lawton paid some or all the funds transferred to it by Nitrochem to Mr. Makhlai, his family members, or any of the other Criminal Defendants to the 2019 Proceedings, this will provide independent corroboration of the validity of the Criminal Judgment and of the existence of the TOAZ-Nitrochem Scheme. *Id.* ¶ 19. If the requested discovery shows that Lawton transferred money it received from Nitrochem to Mr. Sergei Makhlai or other individuals or companies associated with the TOAZ majority shareholders, it would be powerful evidence that (i) Lawton and Nitrochem are controlled by Sergei Makhlai and his associates; (ii) the majority shareholders of TOAZ were receiving, through Nitrochem, profits diverted from TOAZ, (iii) the TOAZ-Nitrochem Scheme existed, and

10

(iv) consequently, contrary to the allegations of the Irish Plaintiffs, the 2019 Proceedings did have merit. Melnikov Decl. ¶ 45.

In the Russian Proceedings, the requested discovery is important to establish a link between the wrongdoing and newly identified participants in the TOAZ-Nitrochem Scheme, including Mr. Andrei Makhlai and Mrs. Irina Makhlai. *Id.* ¶¶ 62. This requested discovery would be admissible in the Russian Proceedings. *Id.* ¶¶ 71-77. If the requested wire transfers show that Mr. Andrei Makhlai and Mrs. Irina Makhlai received funds from Nitrochem through Lawton, it would be powerful and useful evidence in the Russian Proceedings. *Id.* ¶¶ 67-68. The requested discovery could also reveal the involvement of other wrongdoers in the TOAZ-Nitrochem Scheme who could also be named as defendants in the Russian Proceedings. *Id.* ¶ 61. Civil litigation could be brought against those individuals under the Russian Civil Code and the Russian Law on Joint Stock Companies. *Id.* ¶ 68.

### D.  Uralchem's Application Should Be Granted

Uralchem meets all the statutory criteria for the issuance of an order allowing the requested discovery under 28 U.S.C. § 1782. TD Bank is located in this district, and Uralchem, a defendant in the Irish Proceedings and an anticipated Plaintiff in the Russian Proceedings, intends to use the documents sought from TD Bank in those proceedings. The documents sought from TD Bank will provide independent evidence that the TOAZ-Nitrochem Scheme existed, which is a central part of Uralchem's defense in the Irish Proceedings, and are relevant to proving Uralchem's claims against new defendants who participated in and benefitted from the TOAZ-Nitrochem Scheme in the Russian Proceedings. Moreover, as set forth in the Memorandum of Law filed concurrently herewith, all the discretionary factors that this Court

may consider likewise favor granting this application. *See Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264-65 (2004) (describing discretionary factors).

Accordingly, Uralchem respectfully requests that the Court (a) grant the Application for an Order to Conduct Discovery in a Foreign Proceeding; (b) enter the Proposed Order filed concurrently with this Application (c) grant Petitioner leave, pursuant to 28 U.S.C. § 1782, to serve the subpoena attached to the Bevelock Declaration as Exhibit "A"; and (d) grant any and all other further relief to Petitioner as deemed just and proper.

Dated:  September 27, 2021
      Madison, New Jersey

                              BEVELOCK & FISHER LLC


                              *s/ Gregory J. Bevelock*
                              Gregory J. Bevelock
                              14 Main Street, Suite 200
                              Madison, New Jersey 07940
                              Tel:  973-845-2999

                              *Attorneys for Petitioner*

Of Counsel:

O. Andrew F. Wilson
Emery Celli Brinckerhoff Abady Ward & Maazel LLP
600 Fifth Avenue, 10th Floor
New York, NY 10020

Adam S. Lurie
Linklaters LLP
601 Thirteenth Street NW, Suite 400 South
Washington, D.C. 20005