# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

In re *Ex Parte* Application of JSC UNITED
CHEMICAL COMPANY URALCHEM for an
Order to Conduct Discovery for Use in Foreign
Proceedings Pursuant to 28 U.S.C. § 1782.

Case No. 20 Civ. 3651

Oral Argument Requested

# PETITIONER'S MEMORANDUM OF LAW
# IN SUPPORT OF ITS AMENDED APPLICATION

BEVELOCK & FISHER LLC
Gregory J. Bevelock
14 Main Street, Suite 200
Madison, New Jersey 07940
Tel: 973-845-2999

EMERY CELLI BRINCKERHOFF
ABADY WARD & MAAZEL LLP
O. Andrew F. Wilson (*pro hac vice*)
600 Fifth Avenue, 10th Floor
New York, NY 10020

LINKLATERS LLP
Adam S. Lurie
601 Thirteenth Street NW, Suite 400 South
Washington, D.C. 20005

*Attorneys for Petitioner*

<u>TABLE OF CONTENTS</u>

<u>PAGE NO.</u>

PRELIMINARY STATEMENT ...................................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND....................................................................3

ARGUMENT ..............................................................................................................................12

     I.        THE STATUTORY REQUIREMENTS OF 28 U.S.C. § 1782 ARE MET..........13

            A.     The Material Sought is For Use in Foreign Proceedings...........................13

            B.     Uralchem Is an Interested Person .............................................................17

     II.       THE DISCRETIONARY FACTORS FAVOR GRANTING THE
           APPLICATION .........................................................................................17

            A.     TD Bank is Not a Participant in the Foreign Proceedings........................18

            B.     The Foreign Proceedings Are Receptive to U.S. Judicial
                Assistance .................................................................................................18

            C.     Petitioner Is Not Circumventing Foreign Proof-Gathering
                Restrictions ...............................................................................................21

            D.     The Discovery Is Not Unduly Intrusive or Burdensome ..........................21

            E.     Use of Requested Evidence ......................................................................23

CONCLUSION.............................................................................................................................23

TABLE OF AUTHORITIES

PAGE NO.

**Cases**

*Base Metal Trading S.A. v. Russian Aluminum*,
253 F. Supp. 2d 681 (S.D.N.Y. 2003)............................................................................ 20

*In re Accent Delight Int'l Ltd.*,
869 F.3d 121 (2d Cir. 2017).......................................................................................... 17

*In re Application of Hornbeam Corp.*,
No. 14-MC-424, 2014 WL 8775453 (S.D.N.Y. Dec. 24, 2014).................................... 22

*In re Bayer AG*,
146 F.3d 188, (3d Cir. 1998), *as amended* (July 23, 1998) ...................................... 12, 13

*In re Biomet Orthopaedics Switzerland GmBh*,
742 F. App'x 690 (3d Cir. 2018) .................................................................................. 18

*In re Cal. State Teachers' Ret. Sys.*,
No. 16 Civ. 4251, 2017 WL 1246349 (D.N.J. Apr. 3, 2017) ........................................ 22

*In re Chevron Corp.*,
633 F.3d 153 (3d Cir. 2011)..................................................................................... 19, 21

*In re Ex Parte Application of JSC United Chem. Co. Uralchem*,
19 Civ. 140 (D. Conn. Nov. 22, 2019)........................................................................ 2, 6

*In re Ex Parte Application of JSC United Chemical Company Uralchem*,
No. 20 Misc. 187 (S.D.N.Y. May 18, 2020)..................................................................... 7

*In re Ex Parte Glob. Energy Horizons Corp.*,
647 F. App'x 83 (3d Cir. 2016) .................................................................................... 22

*In re Hornbeam Corp.*,
722 F. App'x 7 (2d Cir. 2018) ...................................................................................... 16

*In re O'Keeffe*,
646 F. App'x 263 (3d Cir. 2016) .................................................................................. 18

*In re O'Keeffe*,
No. 14 Civ. 5835, 2015 WL 540238 (D.N.J. Feb. 10, 2015)......................................... 18

*In re Owl Shipping, LLC*,
No. 14 Civ, 5655, 2014 WL 5320192 (D.N.J. Oct. 17, 2014)........................................ 19

*In re Sargeant*,
278 F. Supp. 3d 814 (S.D.N.Y. 2017)............................................................................ 15

*In re The Application of Kate O'Keeffe*,
    No. 14 Civ. 5835, 2015 WL 5039723 (D.N.J. Aug. 26, 2015).........................................18

*In re the Application of Sauren Fonds-Select SICAV v. For Discovery Pursuant to 28 U.S.C. §*
*1782*,
    No. 216 Civ. 133, 2016 WL 6304438 (D.N.J. Oct. 26, 2016).........................................13

*In re Top Matrix Holdings Ltd.*,
    No. 18 Misc. 465, 2020 WL 248716 (S.D.N.Y. Jan. 16, 2020).........................................16

*Intel Corp. v. Advanced Micro Devices, Inc.*,
    542 U.S. 241 (2004)...............................................................................................................2

*John Deere Ltd. v. Sperry Corp.*,
    754 F.2d 132 (3d Cir. 1985)................................................................................................19

*Kulzer v. Esschem, Inc.*,
    390 F. App'x 88 (3d Cir. 2010) ..........................................................................................13

*Lancaster Factoring Co. v. Mangone*,
    90 F.3d 38 (2d Cir. 1996)....................................................................................................13

*Mees v. Buiter*,
    793 F.3d 291 (2d Cir. 2015).............................................................................13, 15, 16, 21

*RIGroup LLC v. Trefonisco Mgmt. Ltd.*,
    949 F. Supp. 2d 546 (S.D.N.Y. 2013).................................................................................20

*Victoria LLC v. Likhtenfeld*,
    791 F. App'x 810 (11th Cir. 2019) .....................................................................................19

**Statutes**

28 U.S.C. § 1782............................................................................................................*passim*

Fed. R. Civ. P. 26 ......................................................................................................................22

## PRELIMINARY STATEMENT

Pursuant to the District Court's Order granting Petitioner's request to amend its application (Dkt. 33), JSC Uralchem now submits this brief in support of its new request for a subpoena pursuant to 28 U.S.C. § 1782 to obtain documents from TD Bank for use in foreign proceedings. This amended application differs from Uralchem's previous application in two significant respects. First, it seeks discovery for use in an additional new proceeding—in Ireland—which has recently progressed beyond jurisdictional questions such that Uralchem must now gather evidence to defend itself on the merits. Second, it presents new evidence concerning anticipated proceedings in Russia (including new declarations from foreign counsel that explain how the documents sought can be used in the Russian proceedings, and that provide new information about the nature and fairness of those proceedings).

Both the Irish and Russian proceedings, where Uralchem intends to use the documents sought here, arise out of the same Russian shareholder dispute. For years, individuals controlling PJSC Togliattiazot ("TOAZ") caused it to sell its products at artificially low prices to a Swiss trading company Nitrochem Distribution AG ("Nitrochem") controlled by the same individuals, so that Nitrochem could then resell the products to third parties at market value, thereby accumulating profits in Nitrochem (the "TOAZ-Nitrochem Scheme"). Because of this scheme, TOAZ and its minority shareholders, including Uralchem, for years were deprived of a significant portion of profits. When this scheme came to light, it became the subject of criminal proceedings in Russia, resulting in heavy sanctions against managers and majority shareholders of TOAZ who were found to have perpetrated the scheme. Now, those shareholders, through offshore companies they control, have commenced civil litigation in Ireland alleging that Uralchem and other defendants conspired with Russian authorities to fabricate the TOAZ-Nitrochem Scheme to defraud the plaintiffs in the Irish proceedings. Petitioner now must defend

itself, *inter alia,* by proving the TOAZ-Nitrochem Scheme. Petitioner also plans to commence civil litigation in Russia against individuals who were not parties to the prior criminal proceedings to hold them jointly liable for damages caused by the TOAZ-Nitrochem Scheme.

To identify the proper defendants for the anticipated Russian proceedings and to prove that those individuals profited from the fraudulent scheme, Petitioner successfully sought discovery under 28 U.S.C. § 1782 in the United States District Court for the District of Connecticut. There, the District Court ordered discovery of bank records concerning wire transfers sent or received by Nitrochem, in which transfers the Stamford, CT branch of UBS AG ("UBS Stamford") acted as an intermediary or correspondent bank. *See In re Ex Parte Application of JSC United Chem. Co. Uralchem*, 19 Civ. 140 (D. Conn. Nov. 22, 2019) (order granting *ex parte* motion). The discovery produced by UBS Stamford revealed that Nitrochem engaged in highly suspicious transfers to Lawton Lane Chemical Inc. ("Lawton"), a shell company associated with an individual who exerts *de facto* control over TOAZ, through TD Bank branches in New Jersey. Uralchem now seeks discovery of wire transfers to and from Lawton made through TD Bank. Such discovery is expected to uncover further connections between Lawton and TOAZ's majority shareholders and the path of TOAZ's diverted profits, to help further substantiate the existence of the TOAZ-Nitrochem Scheme.

Uralchem's amended application should be granted because Petitioner satisfies each of § 1782's statutory requirements and the discretionary factors favor production. *See Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 244-45 (2004). Petitioner is a defendant in the Irish proceedings and will be the plaintiff in the anticipated Russian proceedings and seeks discovery for use in those litigations from TD Bank, which is found in this district. Further, TD Bank is not a party to the Irish proceedings and will not be a party to the anticipated Russian proceedings;

the discovery sought is admissible and useful in the Irish and Russian proceedings; this application is not an attempt to circumvent Irish or Russian evidence gathering restrictions; and the requested discovery is tailored and minimally burdensome.

Accordingly, Petitioner respectfully requests that this Court grant this amended application for discovery for use in foreign proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

Petitioner Uralchem is a joint-stock company incorporated in Russia that produces ammonium nitrate and nitrogen fertilizers. Declaration of Vladimir Melnikov, September 27, 2021 ("Melnikov Decl.") ¶ 4. In 2008, Uralchem became a minority shareholder in TOAZ, a Russian company that is among the top ammonia producers in the world. *Id.* ¶ 5. Uralchem currently holds approximately 10% of TOAZ shares. *Id*. Although the ownership structure of TOAZ is not transparent, it is believed that Mr. Vladimir Makhlai and/or Mr. Sergei Makhlai are majority indirect shareholders of TOAZ and exercise *de facto* control over TOAZ through a number of legal entities. Melnikov Decl. ¶¶ 6, 10.

### *The TOAZ-Nitrochem Scheme*

Uralchem believes that, for several years, it has been a victim of a fraudulent scheme through which the majority shareholders and management of TOAZ diverted profits from TOAZ by selling TOAZ's products to a Swiss trading company, Nitrochem, at artificially low prices. Melnikov Decl. ¶ 8. Nitrochem would in turn resell the products at market value. *Id.* As a result of this scheme, profits were accumulated by Nitrochem rather than TOAZ. *Id.* Those profits were then distributed among the majority shareholders, or their controlling persons, which caused loss to, and underfinancing of, TOAZ and material injury to its minority shareholders including Uralchem. *Id.*

***Criminal and Tax Proceedings in Russia Concerning the TOAZ-Nitrochem Scheme***

Similar schemes, in which majority shareholders siphon off company profits to foreign companies to the detriment of minority shareholders and the state budget, have proliferated in recent years in Russia. *Id.* ¶ 9. This has prompted Russian tax authorities to take action, including with respect to the TOAZ-Nitrochem Scheme. *Id.* Through a number of audits, Russian tax authorities found that, through TOAZ's artificially low export prices, TOAZ had unlawfully evaded significant amounts of profit tax owed to the Russian government between 2009 and 2013. *Id.* TOAZ unsuccessfully sought to challenge these findings in a series of legal proceedings before Russian courts. *Id.* In total, 36 judges in 7 different courts (including the Supreme Court of the Russian Federation) found that, while trading with Nitrochem, TOAZ had diminished its export prices to evade profit tax. *Id.* These court proceedings also established that TOAZ and Nitrochem belonged to one group of companies controlled, *inter alia*, by Mr. Vladimir Makhlai and Mr. Sergei Makhlai. *Id.* ¶ 10.

Criminal charges for fraud were brought against five individuals (collectively, the "Criminal Defendants"), including Mr. Sergei Makhlai and Mr. Vladimir Makhlai, for their role in this below-market export scheme, and on July 5, 2019, a criminal court in Russia found them guilty of fraud (the "Criminal Judgment"). *Id.* ¶ 11. In the context of this criminal proceeding, the court also granted a related civil claim by Uralchem for damages caused to TOAZ and Uralchem as its shareholder by the TOAZ-Nitrochem Scheme (the "Prior Uralchem Civil Claim"). *Id.* ¶ 12. This procedure, through which a victim of crime brings a civil claim for damages resulting from a crime that is being prosecuted as part of those criminal proceedings, is a regular remedy in Russia. *Id.* The Prior Uralchem Civil Claim was brought on behalf of Uralchem and TOAZ against the Criminal Defendants and a number of companies found to have

4

participated in the TOAZ-Nitrochem Scheme. *Id.* The Criminal Judgment awarded damages to TOAZ and Uralchem. *Id.* On November 26, 2019, an appellate court upheld the Criminal Judgment (together, with the Criminal Judgment and the Prior Uralchem Civil Claim, the "2019 Proceedings"). *Id.* ¶ 13. However, as of today, the court-ordered compensation has not been paid. *Id.*

### The Anticipated Civil Proceeding in Russia

Uralchem anticipates commencing fresh civil legal proceedings in Russia (the "Russian Proceedings") to pursue damages claims against individuals who were involved in the TOAZ-Nitrochem Scheme but who were not parties to the 2019 Proceedings. *Id.* ¶¶ 59-60. While the 2019 Proceedings held some individuals accountable for their roles in the TOAZ-Nitrochem Scheme, that judgment has yet to be satisfied. To obtain full redress, Uralchem retained Linklaters CIS to investigate and pursue any additional civil claims available. *Id.* ¶ 61.

As part of this investigation, Uralchem has identified at least two individuals who were likely involved in and benefited from the TOAZ-Nitrochem Scheme but who were not defendants in the 2019 Proceedings—Mr. Andrei Makhlai and Mrs. Irina Makhlai—as potential defendants. *Id.* ¶ 62. Recent evidence suggests that both have ties to the TOAZ-Nitrochem Scheme. Mrs. Irina Makhlai—the wife of Sergei Makhlai, a *de facto* controlling person of TOAZ—has demonstrable ties to Lawton, a shell company that received suspicious wire transfers from Nitrochem. *Id.* ¶¶ 64-65. She also recently brought legal proceedings in Russia to establish her alleged entitlement to approximately 35% of TOAZ's shares. *Id.* ¶¶ 69-70. The first instance court dismissed her claim on the grounds that it was brought for the purpose of assisting Mr. Sergei Makhlai to put his assets out of reach in the wake of the Criminal Judgment. *Id.* ¶ 71.

Similarly, corporate documents link Mr. Andrei Makhlai, the brother of Sergei Makhlai, to Nitrochem and a number of offshore entities related to TOAZ. *Id*. ¶ 68.

### Discovery Obtained from UBS Stamford and New York Banks

To support the anticipated proceedings, Uralchem has sought to obtain documents that relate to fraudulent distributions of profits that Nitrochem received from reselling the TOAZ products it acquired at artificially low prices to third parties at market rates. *Id.* ¶ 23. Nitrochem often received payment for these products in U.S. dollars. *Id.* Invoices and payment confirmations obtained in the 2019 Proceedings show that while these payments were ultimately credited to Nitrochem's Swiss bank account with UBS AG (Switzerland), they passed through a bank account at UBS Stamford. *Id.* ¶ 24. UBS Stamford, therefore, possessed information regarding Nitrochem's U.S. dollar transactions, including as part of the TOAZ-Nitrochem Scheme. *Id.* 4

Accordingly, Uralchem brought an application to obtain records of the U.S. transfers. On November 22, 2019, the United States District Court for the District of Connecticut granted Uralchem's petition, brought pursuant to 28 U.S.C. § 1782, for subpoenas to obtain discovery of data concerning wire transfers sent or received by Nitrochem that passed through UBS Stamford. *See In re Ex Parte Application of JSC United Chem. Co. Uralchem*, 19 Civ. 140. The District of Connecticut then granted subsequent requests for subpoenas to two additional UBS-related entities: UBS Financial Services and UBS Group AG. Melnikov Decl. ¶ 25.

The discovery UBS Stamford produced (the "UBS Discovery") revealed a number of highly suspicious transfers between Nitrochem and shell companies with no apparent ties to the chemical industry. *See In re Ex Parte Application of JSC United Chemical Company Uralchem*,

No. 20 Misc. 187, Dkt. 1 (S.D.N.Y. May 18, 2020). Those transfers passed through a number of banks in New York City (the "New York Banks"). *Id.*

As part of its ongoing effort to uncover the TOAZ-Nitrochem Scheme, Uralchem brought another discovery application in New York. On May 18, 2020, after holding a hearing, the Hon. Gregory H. Woods of the United States District Court for the Southern District of New York granted Uralchem's application, brought pursuant to 28 U.S.C. § 1782, for subpoenas to obtain discovery of data concerning wire transfers sent and received by Nitrochem and those shell companies that passed through the New York banks. *See Id.*, Dkt. 21. All of the New York Banks were served; none opposed the application.

***Suspicious Transactions Pass Through New Jersey to Lawton Lane Chemical, Inc.***

The UBS Discovery also revealed a number of highly suspicious transactions involving Lawton, a North Carolina company. Melnikov Decl. ¶ 26. Between 2009 and 2013, only through the UBS account, a total of $12,410,743 was transferred from Nitrochem to Lawton. *Id.* ¶ 27. The funds Nitrochem sent to Lawton were credited to or passed through accounts at TD Bank branches in New Jersey. *Id.* ¶ 28. This significant amount of money was sent to Lawton without an obvious business reason, raising concerns about the lawfulness of these transactions. *Id.* ¶ 29. Lawton is a company without a website or any other public profile. *Id.* There is no indication that Lawton is involved in trading with fertilizer companies, such as Nitrochem, or that it conducts any other valid commercial business. *Id.* Although Lawton opposed Uralchem's original § 1782 application before this Court, it never denied these transfers or offered any explanation for them.

In addition to the suspicious nature of the Lawton transactions themselves, public filings suggest that Lawton is connected to TOAZ through Mr. Sergei Makhlai, who exercises *de facto* control of TOAZ. *Id.* ¶ 28. For example, public records connect Sergei Makhlai to Lawton

through a company called MIC International Trading, Inc. ("MIC"). *Id.* ¶ 30. Sergei Makhlai was the former President of MIC. *Id* ¶ 31. And, in turn, MIC shared the same Secretary/Treasurer as Lawton: Irene Michaels. *Id.* MIC's secretary, Irene Michaels, also has a name and signature that are notably similar to the name and signature of Sergei Makhlai's wife, Irina Makhlai. *Id.* In addition, Lawton's President, Pat Marchiionda, has the same address as the Principal Office Address of MIC. *Id.* ¶ 32.

***Uralchem's Original Section 1782 Application in this Court***

Given that (i) there were no obvious business reasons for Nitrochem to transfer $12,410,743 to Lawton; (ii) Lawton appears to be a shell company; and (iii) Lawton is apparently connected to Sergei Makhlai, who controls TOAZ (which along with Nitrochem executed the above-described scheme); Uralchem sought discovery, through application to this Court, from TD Bank of wire transfers to and from Lawton. Petitioner filed this original § 1782 Application on April 3, 2020. Dkt. 1. The application sought discovery of data concerning wire transfers sent or received by Lawton between 2009 and the present, including but not limited to transfers in which TD Bank acted as intermediary or correspondent bank. This discovery was expected to indicate (i) whether Lawton received additional funds from Nitrochem or other entities connected to TOAZ that did not appear in the UBS Discovery (either because the transfer passed through another bank used by Nitrochem in the US or occurred outside the period requested in the UBS discovery), and (ii) who ultimately received the funds sent from Nitrochem through Lawton. Melnikov Decl. ¶ 35(b).

With Uralchem's consent, this Court granted Lawton's request to intervene and set a briefing schedule. Dkt. 10. On May 20, 2020, TD Bank, the object of the subpoena did not oppose the application. Dkt. 11.

This Court denied Petitioner's Application without a hearing on the grounds that it sought information that was not "for use" in a foreign proceeding because similar evidence was not required in the prior 2019 Proceedings. Dkt. 26, at 9-10. The Opinion reasoned that the subpoena would not be in the "interests of justice" based on three non-Russian decisions about other proceedings that "had previously found that Uralchem-related proceedings like this one may be subject to undue governmental influence." *Id.* at 14.

On June 29, 2021, after Uralchem appealed , the Hon. Claire C. Cecchi issued an Opinion allowing Uralchem to file an amended application, "to the extent Uralchem has additional evidence that it wishes to submit in support of its requested relief," within thirty days. Dkt 33 at 7. The Court subsequently extended this deadline to September 27, 2021. Dkt. 36.

### *The Irish Proceedings*

A month after Judge Cecchi issued her opinion granting leave to amend Uralchem's application, the Court in related proceedings against Uralchem in Ireland (the "Irish Proceedings") indicated that it had decided to deny Uralchem's application to dismiss those proceedings on jurisdictional grounds with a written judgment to follow.

The Irish Proceedings were initiated in the High Court of Ireland on November 9, 2016, by four offshore companies that, as fiduciary managers, claim to hold approximately 70% stake in TOAZ (the "Irish Plaintiffs"). Melnikov Decl. ¶¶ 15, 26; Declaration of Garrett Breen, September 27, 2021 ("Breen Decl.") ¶ 6. Uralchem believes that the Irish Plaintiffs are controlled by Mr. Sergei Makhlai and his associates, and this has not been admitted or denied by the Irish Plaintiffs in the documents submitted in the Irish Proceedings to date. Breen Decl. ¶ 6.

The Irish Plaintiffs allege that Uralchem and other defendants conspired with Russian state authorities, including through the 2019 Proceedings, to defraud and injure the Irish

Plaintiffs by wrongfully divesting them of their shareholdings in TOAZ and/or causing catastrophic damage to the value of their shareholdings. Melnikov Decl. ¶ 16. The Russian courts' findings concerning the TOAZ-Nitrochem Scheme in the 2019 Proceedings, as well as in the multiple tax proceedings, are all alleged to be a part of the claimed conspiracy. *Id.* The Irish Plaintiffs are seeking damages in the amount of the value of their 70% shareholding in TOAZ, a company that they claim to be valued in excess of $3 billion. *Id.* ¶¶ 41, 57.

Uralchem challenged the jurisdiction of the Irish court to hear these claims on the grounds that the Irish Plaintiffs' case had no connection to Ireland and they were artificially using a single Irish defendant as a device to manufacture jurisdiction. *Id.* ¶ 17. While the parties are still awaiting a formal written decision, on July 30, 2021, the presiding judge orally indicated that the Irish court would assume jurisdiction. *Id.* ¶ 18; Breen Decl. ¶ 9. Because of the long-pending jurisdictional dispute, Uralchem has not yet presented a substantive defense in the Irish Proceedings. Melnikov Decl. ¶ 19; Breen Decl. ¶ 9. Once the Irish court issues a written ruling on the jurisdictional issue (without prejudice to any appeal), Uralchem will have to defend itself on the merits. *Id.*

The UBS Discovery, obtained through Uralchem's § 1782 application in the District of Connecticut, has already been used in the Irish Proceedings without issue. Melnikov Decl. ¶¶ 47-49. In July 2020, the Irish Plaintiffs filed an interlocutory application for an anti-enforcement injunction against Uralchem, seeking to prohibit Uralchem from enforcing the damages awarded to TOAZ and Uralchem in the 2019 Proceedings. Breen Decl. ¶ 12. In support of their application, the Irish Plaintiffs allege that the judgments issued and upheld in the 2019 Proceedings were fraudulently procured by Uralchem and claim the TOAZ-Nitrochem Scheme was fabricated by Uralchem and other defendants. *Id.* ¶ 14. Uralchem vigorously defended itself

against that application. As part of its defense, it filed an attorney affidavit summarizing the UBS

Discovery obtained in the District of Connecticut, including the transfer of over $12.4 million

from Nitrochem to Lawton and transfers to and from the Irish Plaintiffs and related entities. *Id.*

¶¶ 16-17. No objection was made to the admissibility of this evidence. *Id.* ¶ 16. Judgment on the

anti-enforcement injunction application is pending. *Id.* ¶ 13.

**Uralchem's Amended Application Pursuant to 28 U.S.C. § 1782**

Uralchem now brings an amended application seeking the same limited wire transfer

documents from TD Bank for use in the Russian Proceedings and the Irish Proceedings.

The discovery sought here would be highly relevant in the Irish Proceedings where

Uralchem should have the opportunity to submit important evidence in defense of the Irish

Plaintiffs' claims. *Id.* ¶ 18. The requested discovery has the potential of rebutting the Irish

Plaintiffs' allegation that the TOAZ-Nitrochem Scheme did not exist and was invented by

Uralchem to procure the 2019 Proceedings judgments against the Irish Plaintiffs' assets. *Id.* If,

for instance, the discovery sought here confirms that Lawton was receiving payments from

companies associated with TOAZ, including the Irish Plaintiffs (e.g. through dividends), this will

further confirm the common control among Lawton, Nitrochem, and the Irish Plaintiffs (which

the Irish Plaintiffs deny). If the evidence shows that Lawton paid some or all the funds

transferred to it by Nitrochem to Mr. Makhlai, his family members, or any of the other Criminal

Defendants to the 2019 Proceedings, this will provide independent corroboration of the validity

of the Criminal Judgment and of the existence of the TOAZ-Nitrochem Scheme. *Id.* ¶ 19. If the

requested discovery shows that Lawton transferred money it received from Nitrochem to Mr.

Sergei Makhlai or other individuals or companies associated with the TOAZ majority

shareholders, it would be powerful evidence that (i) Lawton and Nitrochem are controlled by

Sergei Makhlai and his associates; (ii) the majority shareholders of TOAZ were receiving, through Nitrochem, profits diverted from TOAZ, (iii) the TOAZ-Nitrochem Scheme existed, and (iv) consequently, contrary to the allegations of the Irish Plaintiffs, the 2019 Proceedings did have merit. Melnikov Decl. ¶ 45.

In the Russian Proceedings, the requested discovery is important to establish a link between the wrongdoing and newly identified participants in the TOAZ-Nitrochem Scheme, including Mr. Andrei Makhlai and Mrs. Irina Makhlai. *Id.* ¶¶ 62. This requested discovery would be admissible in the Russian Proceedings. *Id.* ¶¶ 71-77. If the requested wire transfers show that Mr. Andrei Makhlai and Mrs. Irina Makhlai received funds from Nitrochem through Lawton, it would be powerful and useful evidence in the Russian Proceedings. *Id.* ¶¶ 67-68. The requested discovery could also reveal the involvement of other wrongdoers in the TOAZ-Nitrochem Scheme who could also be named as defendants in the Russian Proceedings. *Id.* ¶ 61. Civil litigation could be brought against those individuals under the Russian Civil Code and the Russian Law on Joint Stock Companies. *Id.* ¶ 68.

## ARGUMENT

28 U.S.C. § 1782(a) empowers this Court to grant a subpoena for documents on three conditions: (1) the entity from which discovery is sought is in the district; (2) the documents are "for use in a proceeding in a foreign or international tribunal," and (3) the subpoena is sought by an "interested person" in those proceedings.

The statute "was designed to facilitate the conduct of litigation in foreign tribunals, improve international cooperation in litigation, and put the United States into the leadership position among world nations in this respect." *In re Bayer AG*, 146 F.3d 188, 191-92 (3d Cir. 1998), *as amended* (July 23, 1998). In pursuit of these goals, "the section has, over the years, been given increasingly broad applicability." *Lancaster Factoring Co. v. Mangone*, 90 F.3d 38,

41 (2d Cir. 1996) (internal quotation marks, citations, and alterations omitted); *see also Kulzer v. Esschem, Inc.*, 390 F. App'x 88, 92 (3d Cir. 2010) (noting "courts' consistently liberal interpretation of the statute"). The Third Circuit has recognized that the statutory requirements are but "modest prima facie elements." *In re Bayer AG*, 146 F.3d at 195.

Where a court finds that three statutory requirements of § 1782 are met, it may, in its discretion, grant an application for discovery. *See Intel*, 542 U.S. at 264-65.

## I.     THE STATUTORY REQUIREMENTS OF 28 U.S.C. § 1782 ARE MET

Petitioner's application meets all three statutory requirements. TD Bank is found in the District of New Jersey because it is in New Jersey. *See* Bevelock Decl. ¶ 3. The two other prongs—use in foreign proceedings and interested person—are also readily met.

### A.     The Material Sought is For Use in Foreign Proceedings

Both the Irish Proceedings and the Russian Proceedings are well within the statute's broad scope. "The plain meaning of the phrase 'for use in a proceeding' indicates something that will be employed with some advantage or serve some use in the proceeding . . . ." *Mees v. Buiter*, 793 F.3d 291, 298 (2d Cir. 2015). "Federal courts interpret the 'for use' phrase liberally." *In re the Application of Sauren Fonds-Select SICAV v. For Discovery Pursuant to 28 U.S.C. § 1782*, No. 216 Civ. 133, 2016 WL 6304438, at *3 (D.N.J. Oct. 26, 2016). The evidence need not be necessary for the applicant to prevail, or even admissible in the foreign proceeding. *See id.* ("a district court should not consider the discoverability or admissibility of the information in the foreign forum in making its determination"); *see also Mees*, 793 F.3d at 298-99 & n.8. The evidence only needs to be able to play some productive role "at some stage of a foreign proceeding . . . within reasonable contemplation." *Mees*, 793 F.3d at 301. Nor must the proceeding be currently underway. The Supreme Court has held that under § 1782 "[i]t is not necessary for the adjudicative proceeding to be pending at the time the evidence is sought, but

only that the evidence is eventually to be used in such a proceeding." *Intel*, 542 U.S. at 259

(citation and quotation marks omitted). Here, the evidence Uralchem seeks is "for use" in both

the Irish Proceedings and the contemplated Russian Proceedings.

   Wire transfers showing that profits siphoned from TOAZ to Nitrochem and then through

Lawton were then transferred to individuals who control TOAZ will provide independent

evidence that the TOAZ-Nitrochem Scheme existed, which is a central part of Uralchem's

defense in the Irish Proceedings. *See* Melnikov Decl. ¶¶ 44-46. As the UBS Discovery

demonstrates, Nitrochem transferred over $12 million to Lawton through TD Bank. *See Id.* ¶¶

26-27. The fact that Lawton appears to be a shell company with no legitimate business purpose

and is affiliated with Sergei Makhlai, who controls TOAZ, suggests that payments from third

parties for products Nitrochem had acquired through its fraudulent scheme with TOAZ were

passed on to Lawton. *See Id.* ¶ 28. These payments represent part of the profit accumulated by

Nitrochem as a result of this fraudulent scheme. Where these profits were subsequently

transferred is important to Uralchem's ability to prove by independent evidence that TOAZ

majority shareholders and other controlling persons orchestrated and benefited from this scheme,

and therefore that the basis for the 2019 Proceedings was not fabricated, as the Irish Plaintiffs

suggest. *See id.* ¶¶ 44-46, 50. If, for example, the requested discovery reveals that funds

transferred from Nitrochem to Lawton were subsequently transferred to one of the Criminal

Defendants, it would provide powerful rebuttal evidence against the Irish Plaintiffs' claims that

the 2019 Proceedings against the Criminal Defendants, for their role in the Nitrochem-TOAZ

Scheme, were baseless. *See* Breen Decl. ¶ 18. If the discovery sought here confirms that Lawton

was receiving payments from companies associated with TOAZ, including the Irish Plaintiffs

(e.g. dividends), it would further confirm the common control among Lawton, Nitrochem and the Irish Plaintiffs (which the Irish Plaintiffs deny).

Uralchem will have the opportunity to use the requested discovery in the ongoing Irish Proceedings and the requested discovery will be admissible there. *Id.* ¶¶ 15, 18; Melnikov Decl. ¶¶ 40-43, 50-52. Indeed, Uralchem has already submitted similar evidence from the UBS Discovery in the Irish Proceedings without objection. Breen Decl. ¶¶ 16-17; Melnikov Decl. ¶ 49.

The requested discovery is also "for use" in the Russian Proceedings. The requested records will help trace proceeds from the TOAZ-Nitrochem Scheme to individuals, including Mrs. Irina Makhlai and Mr. Andrei Makhlai, who participated in and benefited from the unlawful scheme, and Uralchem will be able to use this discovery in the Russian Proceedings. Melnikov Decl. ¶¶ 61-65. *See In re Sargeant,* 278 F. Supp. 3d 814, 821 (S.D.N.Y. 2017) ("for use" requirement met where discovery "will be used to 'piec[e] together the sequence of [a foreign defendant]'s fraud' and to 'trac[e] [his] assets to aid in the attachment proceeding'"). The Russian Proceedings are also "within reasonable contemplation." *Mees,* 793 F.3d at 301.

Following the 2019 Proceedings, Uralchem retained counsel to investigate and litigate additional civil claims related to the TOAZ-Nitrochem Scheme, beyond those asserted in the 2019 Proceedings. Melnikov Decl. ¶ 61. Uralchem now anticipates bringing civil claims under the Russian Civil Code and the Russian Law on Joint Stock Companies against individuals who were not parties to the 2019 Proceedings. *Id.* ¶¶ 62, 69. Counsel for Uralchem confirms the viability of these claims under Russian law and anticipates that the requested discovery will be admissible in the Russian Proceedings. *Id.* ¶¶ 59, 71-77; *see also* Declaration of William Butler, September 27, 2021 ("Butler Decl.") ¶¶ 14-19. *See In re Top Matrix Holdings Ltd.*, No. 18 Misc.

465, 2020 WL 248716, at *4 (S.D.N.Y. Jan. 16, 2020) ("sworn statements attesting to petitioner[']s[] intent to litigate and describing the legal theories on which they plan to rely are sufficiently concrete to meet the statutory requirement"); *In re Hornbeam Corp.*, 722 F. App'x 7, 9-10 (2d Cir. 2018) (the fact that Petitioner had "previously brought two related actions in the" foreign jurisdiction "and represented that it intended to initiate further litigation once it obtained additional information . . . provides a sufficiently concrete basis for a contemplated foreign proceeding" (internal quotation marks, citations, and brackets omitted)). Petitioner therefore also satisfies the statute's "for use" requirement with respect to the Russian Proceedings.

While a judge in the 2019 Proceedings ruled that similar evidence of receipt of funds was not necessary in order for Uralchem to prove its claims in that proceeding against the separate defendants in that litigation because sufficient evidence of those defendants' involvement had already been introduced as part of the criminal proceeding against them, that evidentiary decision will not be relevant to the Russian Proceedings. Melnikov Decl. ¶¶ 72-78. Rather, in the contemplated proceeding, the discovery will be crucial in proving that the pool of persons who participated in and profited from the TOAZ-Nitrochem Scheme included Mrs. Irina Makhlai, Mr. Andrei Makhlai who were not investigated and prosecuted as part of the 2019 Proceedings, and potentially others, should such additional defendants be identified. *Id.*[1] *See also* Butler Decl. ¶¶ 14-19. This is particularly so because currently the only evidence of these individuals' participation in the scheme is indirect. *See* Melnikov Decl. ¶ 76. Nothing about the 2019 Proceedings or its evidentiary rulings diminishes Uralchem's "practical ability to inject the

---

[1] Even if the requested discovery does not prove necessary in order for Uralchem to prove the defendants' liability in the Russian Proceedings, it would still be "for use" there because "discovery sought pursuant to § 1782 need not be necessary for the party to prevail in the foreign proceeding in order to satisfy the statute's 'for use' requirement," *Mees*, 793 F.3d at 298.

requested information into a foreign proceeding," and therefore the "for use" prong is satisfied. *In re Accent Delight Int'l Ltd.*, 869 F.3d 121, 132 (2d Cir. 2017).

### B.      Uralchem Is an Interested Person

Uralchem is an "interested person" in both foreign proceedings. In *Intel*, the Supreme Court held that the term "interested person" includes litigants in the foreign proceeding and all other persons with a reasonable interest in obtaining judicial assistance. *Intel*, 542 U.S. at 256. *See also Kulzer*, 390 F. App'x at 91 ("An interested person includes a party to the foreign litigation." (internal quotation and citation marks omitted)). Here, Uralchem is a defendant in the Irish Proceedings and the anticipated plaintiff in the Russian Proceedings. As a defendant in the Irish Proceedings, where billions of dollars of damages are sought from it, Uralchem has a significant interest in obtaining evidence it could use to successfully defend itself in that forum. *See* Melnikov Decl. ¶¶ 55-57. Given the significant financial harm Uralchem has suffered from the TOAZ-Nitrochem Scheme, it also has "a reasonable interest in obtaining judicial assistance" from a Russian court by bringing the anticipated litigation. *Intel*, 542 U.S. at 256.

## II.      THE DISCRETIONARY FACTORS FAVOR GRANTING THE APPLICATION

If the statutory requirements of § 1782 are met, a district court may grant the application, in its discretion. The Supreme Court has identified several factors for courts to consider when exercising this discretion: (1) whether the person from whom discovery is sought is a participant in the foreign proceeding; (2) the nature of the foreign tribunal, the character of the proceeding underway, and the foreign tribunal's receptivity to federal-court assistance; (3) whether the application conceals an attempt to circumvent the proof-gathering restrictions of a foreign country; and (4) whether the application is unduly intrusive or burdensome. *See Intel*, 542 U.S. at 264-65. These factors must be applied "in support of § 1782's 'twin aims' of 'providing efficient assistance to participants in international litigation and encouraging foreign countries by example

to provide similar assistance to our courts.'" *In re Biomet Orthopaedics Switzerland GmBh*, 742

F. App'x 690, 696 (3d Cir. 2018) (citing *Intel*, 542 U.S. at 252).

A review of all these factors supports granting Uralchem's amended application.

### A.      TD Bank is Not a Participant in the Foreign Proceedings

Judicial assistance under § 1782 is less appropriate when the targets of discovery are

participants in the foreign proceedings and the foreign tribunal can directly order them to

produce evidence. *See Intel*, 542 U.S. at 264. Here, TD Bank is not a party to the Irish

Proceedings and will not be a party to the anticipated Russian Proceedings. The Russian

Proceedings will be brought under the Russian Law on Joint Stock Companies and the Russian

Civil Code against certain individuals who participated and profited from the below-market

trading scheme. Melnikov Decl. ¶ 69. TD Bank is not alleged to have orchestrated or profited

from the below-market trading scheme and will not be a party to the anticipated proceeding.

Accordingly, ordering TD Bank to produce materials in this proceeding is not duplicative of the

Irish or Russian Proceedings. It is noteworthy that Lawton, which intervened to oppose

Uralchem's original application, is also not a party to the ongoing Irish Proceedings or the

anticipated Russian Proceedings and cannot be ordered by the foreign courts to produce the

required evidence.

### B.      The Foreign Proceedings Are Receptive to U.S. Judicial Assistance

The "general view is that the second *Intel* factor weighs against discovery only where

there is 'authoritative proof' that the foreign court would reject the evidence." *In re O'Keeffe*,

No. 14 Civ. 5835, 2015 WL 540238, at *4 (D.N.J. Feb. 10, 2015) (*citing Euromepa*, 51 F.3d at

1099-1100), *aff'd sub nom. In re The Application of Kate O'Keeffe*, No. 14 Civ. 5835, 2015 WL

5039723 (D.N.J. Aug. 26, 2015), *aff'd sub nom. In re O'Keeffe*, 646 F. App'x 263 (3d Cir.

2016). The party seeking discovery under § 1782 enjoys "a presumption in favor of foreign

tribunal receptivity that can be offset by reliable evidence that the tribunal would reject the evidence." *In re Owl Shipping, LLC*, No. 14 Civ, 5655, 2014 WL 5320192, at *3 (D.N.J. Oct. 17, 2014). *See also In re Chevron Corp.*, 633 F.3d 153, 162-63 (3d Cir. 2011) ("[T]he parties opposing discovery under section 1782 . . . bear the burden of proof on the receptiveness issue."). No such evidence—let alone authoritative proof—exists. In this case, Petitioner will be able to submit materials obtained in this proceeding in both foreign proceedings, and indeed, the UBS Discovery has already been used in the Irish Proceedings. Melnikov Decl. ¶¶ 47-49.

While the second *Intel* factor properly focuses on foreign tribunals' receptivity to the requested evidence, there is also no question that the foreign proceedings are fair and "comply with notions of due process." *John Deere Ltd. v. Sperry Corp.*, 754 F.2d 132, 136 n.3 (3d Cir. 1985). There can be no dispute from Lawton over the fairness of the Irish Proceedings. That forum was chosen by the Irish Plaintiffs, not Uralchem, who is a defendant in that action. The Irish Plaintiffs, against whom the requested discovery would be used, have no concerns about the impartiality or independence of the Irish courts. *See* Melnikov Decl. ¶¶ 53-55.

Nor are there viable concerns about the fairness of the Russian Proceedings. Courts regularly reject arguments that allegations of corruption in the Russian judicial system weigh against granting § 1782 applications for use in Russian proceedings. For example, the Eleventh Circuit rejected the argument that allegations that "*reiderstvo*" tactics "enabled by a corruptible political and legal system" in Russia should be weighed in the second *Intel* factor. *Victoria LLC v. Likhtenfeld*, 791 F. App'x 810, 817 (11th Cir. 2019). As the Eleventh Circuit explained, these allegations do not relate to "*Intel*'s second factor, which contemplates the climate of the foreign court and proceedings to ascertain how receptive it will be to the sought discovery." *Id. See also Deposit Ins. Agency*, 2018 WL 3536083, at *9 (rejecting allegations of corruption, noting that

"courts have continued to enforce subpoenas pursuant to § 1782 intended for use in Russian courts"); *Base Metal Trading S.A. v. Russian Aluminum*, 253 F. Supp. 2d 681, 706 (S.D.N.Y. 2003) (rejecting argument that "the Russian judiciary is so corrupt that the plaintiffs cannot obtain a fair decision"); *RIGroup LLC v. Trefonisco Mgmt. Ltd.*, 949 F. Supp. 2d 546, 555 (S.D.N.Y. 2013), *aff'd*, 559 F. App'x 58 (2d Cir. 2014) (rejecting argument that Russia was an inadequate forum because of corruption and collecting cases finding same).

In this case, Mrs. Irina Makhlai, one of the contemplated defendants in the Russian Proceedings, recently commenced litigation in Russian courts and claimed, inter alia, her alleged entitlement to 35% shares in TOAZ, tacitly acknowledging that Russian courts are an adequate forum. *See* Melnikov Decl. ¶¶ 78-81.

Nor do English extradition judgments that Lawton sought to rely on in opposing Uralchem's original § 1782 application demonstrate that the Russian courts would not fairly adjudicate the Russian Proceedings. *See* Melnikov Decl. ¶¶ 83-98. Expert reports submitted by Uralchem in the Irish Proceedings demonstrate that conclusions reached in these extradition decisions about Russian courts' ability to fairly adjudicate claims related to the TOAZ-Nitrochem Scheme should be afforded no weight outside those extradition proceedings. *See* Melnikov Decl. ¶¶ 86-98. Among other reasons these conclusions are unreliable, Uralchem was not a party to these extradition proceedings and had no opportunity to rebut allegations made against it, the rules of evidence in English extradition proceedings are relaxed, and it is not uncommon for a requesting state to submit no evidence in these proceedings, leaving judges to rely almost entirely on one-sided evidentiary submissions. *Id.* ¶¶ 89-93. Moreover, English civil courts do not rely on the factual findings made in extradition proceedings and, in fact, sometimes reach opposing conclusions about the same issues. *See id.* ¶¶ 95-97.

Because no reliable evidence, let alone authoritative proof, indicates the Foreign

Proceedings are unreceptive to the documents sought, the second *Intel* factor favors production.

### C.     Petitioner Is Not Circumventing Foreign Proof-Gathering Restrictions

Uralchem's application does not conceal an attempt to circumvent any proof-gathering

restrictions. The "proof-gathering restrictions" relevant for analysis under § 1782 are "rules akin

to privileges that *prohibit* the acquisition or use of certain materials," not "rules that *fail to*

*facilitate* investigation of claims by empowering parties to require their adversarial and non-party

witnesses to provide information." *Mees*, 793 F.3d at 303 n.20 (emphasis in original). This third

discretionary factor does not "impose a requirement that the material be discoverable in the

foreign country for it to be discoverable pursuant to a section 1782 request in the United States."

*In re Chevron Corp.*, 633 F.3d at 163. Instead, materials are only subject to a "proof-gathering

restriction" if the jurisdiction would actively prevent the materials from being used or obtained.

No such proof-gathering restrictions exist here. In the Irish Proceedings, similar wire

transfer records obtained through a § 1782 application in the District of Connecticut have already

been used without issue or objection. Melnikov Decl. ¶¶ 47-49; Breen Decl. ¶¶ 16-17. Nor are

there barriers to the admission of this evidence for use in the Russian Proceedings. Melnikov

Decl. ¶ 78; Butler Decl. ¶¶ 14-19.[2]

### D.     The Discovery Is Not Unduly Intrusive or Burdensome

The document discovery Uralchem seeks is tailored and not unduly intrusive or

burdensome. "Assessment of the fourth factor is virtually identical to the familiar 'overly

burdensome' analysis that is integral to the Federal Rules." *In re Ex Parte Glob. Energy*

---

[2]  The evidentiary ruling from the 2019 Proceedings that proof of receipt of funds was not
necessary for Uralchem to prevail in the Prior Uralchem Civil Proceedings, was limited to that
case and does not prospectively bar Uralchem from gathering or introducing the requested
discovery in the contemplated Russian Proceedings. Melnikov Decl. ¶¶ 72-78.

*Horizons Corp.*, 647 F. App'x 83, 86 (3d Cir. 2016). The requested discovery in this case—for data concerning wire transfers sent or received by Lawton from 2009 to the present—is "reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). It is narrowly drawn and tailored to Uralchem's goal of tracing the profits diverted from TOAZ's shareholders, including Uralchem, through the TOAZ-Nitrochem Scheme. TD Bank was used as a "pass through" or beneficiary bank for Nitrochem's transactions with Lawton. The requested records will therefore help to trace the profits diverted from TOAZ through Nitrochem and subsequently through Lawton, and to identify the eventual beneficiaries of this scheme. This in turn will help Uralchem prove that the TOAZ-Nitrochem Scheme existed, a central element of its defense in the Irish Proceedings, and demonstrate liability of individuals who were not previously prosecuted for their role in the scheme in the Russian Proceedings.

The discovery sought is not unduly burdensome. The discovery sought from TD Bank is highly relevant to Uralchem's defense in the Irish Proceedings and to proving liability of the defendants in the Russian Proceedings, and Uralchem's requests are narrowly tailored. *See* Bevelock Decl. Ex. A (the proposed subpoena). All that TD Bank needs to do is provide records concerning a single company over a circumscribed time period. That is not an unreasonable burden on a large, publicly traded corporation. *See In re Application of Hornbeam Corp.*, No. 14-MC-424, 2014 WL 8775453, at *3, *5 (S.D.N.Y. Dec. 24, 2014) (request to major banks for wire transfer records for all transactions involving a series of entities not unduly burdensome); *In re Cal. State Teachers' Ret. Sys.*, No. 16 Civ. 4251, 2017 WL 1246349, at *5 (D.N.J. Apr. 3, 2017) (finding that twenty-six requests covering a twelve-year period were not unduly intrusive or burdensome). Moreover, TD Bank has not opposed Uralchem's original § 1782 application—which sought identical records.

E.      **Use of Requested Evidence**

Finally, to further ameliorate any claim of prejudice, Uralchem is willing to enter into an

agreement that would limit the use of the requested discovery to the Irish and Russian

Proceedings, absent prior Court approval.

## CONCLUSION

This application for discovery in aid of the Irish and Russian Proceedings satisfies the

requirements of 28 U.S.C. § 1782. The discretionary factors also favor production. The Court

should grant the Proposed Order to allow Petitioner to serve the subpoena annexed as Exhibit A

to the Bevelock Declaration to obtain relevant evidence to aid the Irish and Russian Proceedings.

Date:   September 27, 2021
        Madison, New Jersey

                                        BEVELOCK & FISHER LLC

                                        *s/ Gregory J. Bevelock*
                                        Gregory J. Bevelock
                                        14 Main Street, Suite 200
                                        Madison, New Jersey 07940
                                        Tel: 973-845-2999

                                        *Attorneys for Petitioner*

Of Counsel:

O. Andrew F. Wilson
Emery Celli Brinckerhoff Abady Ward & Maazel LLP
600 Fifth Avenue, 10th Floor
New York, NY 10020

Adam S. Lurie
Linklaters LLP
601 Thirteenth Street NW, Suite 400 South
Washington, D.C. 20005